UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                    Case No. 03-C-1248

RAISA BONDAR,
BORIS GOKHMAN,
HELEN SHUKH,

    Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On November 12, 2003, the plaintiff sued the defendants for violating the False Claims Act. Before the court is the government's motion for partial summary judgment. For the reasons discussed below, the motion will be granted.

### FINDINGS OF FACT

The Medicaid Program is a health care benefit program established by federal law, 42 U.S.C. § 1396 *et seq.,* to pay for medical services provided to indigent and other qualified individuals. (Thornton Aff. ¶ 2.) Under Medicaid health care, providers submit claims to and receive payments from the Wisconsin Medical Assistance Program (WMAP) through an intermediary named EDS. (*Id.* at ¶¶ 4, 5, 6.)

Cares R Us Home Health Care Agency, Ltd. (CRU), provided home health services from September 1995 to September 1998. (Debbink Aff. ¶ 3.) CRU's services included in-home nursing visits and individualized care, such as bathing, hygiene and meal preparation, performed by "personal care workers" (PCWs). (*Id.* at ¶ 4.)

On a weekly basis, PCWs submitted time reports on a form called CRU 210 containing PCWs' hours and description of services. (*Id.* at ¶¶ 5, 6; Defs.' Resp. to

PPFOF 11.) Based on CRU 210 forms, CRU generated electronic claim forms and submitted them to Medicaid. (Debbink Aff. ¶ 6.) Medicaid then paid CRU, which paid PCWs from the funds obtained from Medicaid. (*Id.*) On various occasions, defendants submitted CRU 210 forms containing false information about the hours worked and services provided. (*Id.* Exs. 20 at ¶ 5, 30 at ¶ 5, 40 at ¶ 5.) Defendant Bondar submitted 29 fraudulent CRU 210 forms, defendant Gokhman submitted 18 fraudulent CRU 210 forms, and defendant Shukh submitted 27 fraudulent CRU 210 forms. (Debbink Aff. ¶ ¶ 15, 18, 21.)

Defendants were prosecuted criminally, entered guilty pleas and admitted to executing a health care fraud scheme in violation of 18 U.S.C. §1347. (*Id.* Exs. 20 at ¶ 2, 30 at ¶ 2, 40 at ¶ 2.) Specifically, defendants have admitted to submitting CRU 210 forms stating that they provided care to their clients when either defendants or the clients were out of town. (*Id.* Exs. 20 at ¶ 5, 30 at ¶ 5, 40 at ¶ 5.)

## DISCUSSION

I. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

2

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; however, there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

II. The Number of False Claims

The False Claims Act states that

> Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . .

31 U.S.C. §3729. Defendants concede liability under the False Claims Act, but contest the number of forfeitures. (Defs.' Br. in Opp'n 1.) The government argues that each fraudulent time sheet submitted by each defendant constitutes a false claim subjecting its signator to a forfeiture. (Pl.'s Br. in Supp. 27.) Defendants counter that "[t]he physical act of

3

submitting false time reports – not the total number or report submitted, is what constitutes a false claim." (Defs.' Br. in Opp'n 6.) Thus, the essence of defendants' argument is that the number of fraudulent CRU 210 forms is irrelevant, because the number of false claims is equal to the number of weeks in which fraudulent CRU 210 forms were submitted. (*Id.*) ("The demand in this case is for payment for the entire week's worth of time entries, no matter how many reports are involved.")

In *U.S. v. Borstein*, the subcontractor United National Labs made three invoiced shipments of 21 boxes containing falsely marked tubes to the contractor Model Engineering & Manufacturing Corp, Inc. 423 U.S. 303, 307 (1976). In turn, Model utilized the tubes in its radio kits, then sent the government 35 invoices for all the kits. *Id.* The plaintiff in *Borstein* argued that, because United caused Model to submit 35 false claims, United is liable for 35 forfeitures. *Id.* at 308. However, the Court held that "[a] correct application of the statutory language requires . . . that the focus in each case be upon the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures." *Id.* at 313. Therefore, the court reasoned, United is liable only for its own actions, i.e., three false invoices. *Id.*

The parties agree that the defendants' position is analogous to that of United's. (Defs.' Br. in Opp'n 5; Pl.'s Reply Br. 3-4.) Therefore, in deciding how many false claims were made, the court will analyze the actions of each defendant. Defendants argue that (1) a CRU 210 form is equivalent to one box containing falsely marked tubes, and (2) the submission of multiple forms in one report is equivalent to one invoice. (Defs.' Br. in Opp'n 5.) Therefore, defendants contend, (1) fraudulent CRU 210 forms simply accompany and support a false claim; and (2) the court should conclude that the number

4

of false claims is equal to the number of weeks in which fraudulent submissions were made rather than to the number of fraudulent forms in various submissions. (*Id.* at 4-6.)

The defendants' analysis is flawed, because the time sheets served as invoices rather than supporting documentation. Thus, a complete analogy between *Borstein* and this case is as follows. The boxes containing faulty tubes are equivalent to individual entries on CRU 210 forms, while the forms are equivalent to United's invoices. Thus, under *Borstein,* each time sheet constituted a false claim.

Similarly, in *U.S. v. Krizek*, the court – relying on *Borstein* – held that a false claim occurred when a psychiatrist submitted a claim form (HCFA 1500) containing billing codes (CPT codes). 111 F.3d 934, 940 (D.C. Cir. 1997). The court stated,

> Our conclusion that the claim in this context is the HCFA 1500 form is supported by the structure of the form itself. The medical provider is asked to supply, along with the CPT codes, the date and place of service, a description of the procedures, a diagnosis code, and the charges. The charges are then totaled to produce one request or demand-line 27 asks for total charges, line 28 for amount paid, and line 29 for balance due. The CPT codes function in this context as a type of invoice used to explain how the defendant computed his request or demand.

*Id.* To draw a parallel from *Krizek* to this case, the individual entries on defendants' time sheets are equivalent to CPT codes in *Krizek*, while the time sheets are equivalent to HCFA 1500 forms. Thus, under *Krizek*, the number of false claims is equal to the number of time sheets.

Furthermore, defendants state that "Plaintiff's calculation of the number of false claims ignores the practical reality of how and when the CRU 210 forms were given to CRU." (Defs.' Br. in Opp'n 7.) The timing and manner of a fraudulent CRU 210 submission is irrelevant; whenever such a form is submitted, it is a false claim.

5

III. Excessiveness of penalties

Next, the defendants argue that the penalties requested by the government are unconstitutionally excessive. (Defs.' Br. in Opp'n 8.) The False Claims Act provides that violators are subject to a minimum of $5,000 per false claim forfeiture *plus* triple damages. 31 U.S.C. §3729. In this case, triple damages total $324,000, while the minimum forfeiture the government seeks is $370,000. (Pl.'s Reply Br. 13.) Triple damages are derived directly from the defendants' liability amount. Here, the triple damages equals 88% of the forfeiture;[1] (2) the government does not plan to seek triple damages if it prevails on the issue of forfeiture; and (3) under the statute, the government is entitled both to triple damages and to the forfeitures. Consequently, the court finds that the penalty sought by the government is fair and reasonable and is not unconstitutionally excessive.

Therefore,

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that defendants pay forfeitures as follows: Shukh must pay $5,000 for each of the 27 false claims; Bondar must pay $5,000 for each of the 29 false claims, and Gokhman must pay $5,000 for each of 18 false claims.

Dated at Milwaukee, Wisconsin, this 29th day of August, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

---

[1] ($324,000 / $370,000) x 100% = 88%

6